IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2019

**JAVONTA MARQUIS PERKINS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2012-C-2144    Angelita Blackshear Dalton, Judge**

_____

**No. M2018-02223-CCA-R3-PC**

_____

The Petitioner, Javonta Marquis Perkins, appeals the post-conviction court's denial of his petition for post-conviction relief in which he argued that juvenile counsel was ineffective for waiving the juvenile transfer hearing and failing to investigate his mental health in connection with the transfer. The Petitioner's case was transferred to criminal court, and after two trials, he was convicted of aggravated robbery, carjacking, and possession of a firearm during the commission of a dangerous felony. He received an effective sentence of thirteen years. After a review of the record and applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Chelsea Nicholson (on appeal) and Sean T. McKinney (at post-conviction hearing), Nashville, Tennessee, for the appellant, Javonta Marquis Perkins.

Herbert H. Slatery III, Attorney General and Reporter; Jeffery D. Zentner, Assistant Attorney General; Glenn Funk, District Attorney General; and Mindy Morris, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

The Petitioner was sixteen when the crimes were committed, and he was originally charged in juvenile court. He waived his transfer hearing, and his case was transferred to

criminal court. He was indicted for aggravated robbery, carjacking, aggravated assault, evading arrest, resisting arrest, and possession of a firearm during the commission of a dangerous felony. After the first trial, the jury found the Petitioner guilty of evading arrest, and he was acquitted of aggravated assault. *State v. Javonta Marquis Perkins*, No. M2015-01025-CCA-R3-CD, 2016 WL 6595265, at *2 (Tenn. Crim. App. Nov. 7, 2016). The jury was unable to reach a verdict on the remaining charges, and the trial court declared a mistrial on those charges. *Id.* This court affirmed the evading arrest conviction on direct appeal. *Id.* After the second trial, the Petitioner was convicted of aggravated robbery, carjacking, and possession of a firearm during the commission of a dangerous felony. *State v. Javonta Marquis Perkins*, No. M2015-02423-CCA-R3-CD, 2017 WL 3311317, at *1 (Tenn. Crim. App. Aug. 3, 2017), *perm. app. denied* (Tenn. Dec. 6, 2017).

### Trial Proceedings

The evidence presented at trial established that at approximately 1:45 a.m. on March 3, 2012, the victim parked his car in his parents' driveway when the Petitioner and another man approached him. *Id*. at *1. The Petitioner held a gun to the victim's head and demanded that the victim get on the ground. *Id.* The Petitioner took the victim's keys and gave the keys to the other man. *Id.* While the victim was lying on the ground, the other man tried to back the victim's car out of the driveway. *Id.* The Petitioner fired a shot in the air, got into the victim's car, and the two men drove away. *Id.*

The victim called 9-1-1 and reported the incident. *Id.* When officers arrived, the victim gave descriptions of the Petitioner and the car. *Id.* at *2. Officers saw the victim's car approximately one hour after leaving the victim's residence. *Id.* Officers activated their emergency lights and sirens, but the driver of the car refused to stop. Instead, the driver drove through a parking lot and over a curb, went airborne, and then crashed in the woods. A K9 officer responded to the scene of the crash, and a police dog tracked the Petitioner into the woods, where officers apprehended him. The Petitioner was sentenced to ten years each for the aggravated robbery and carjacking convictions and three years for the possession of a weapon conviction.[1] The trial court ordered the carjacking and aggravated robbery sentences to be served concurrently to each other, and the possession of a weapon during a dangerous felony sentence was ordered to be served consecutively.

---

[1] The opinion on direct appeal stated that the sentence for the weapons conviction was six years. *Perkins*, 2017 WL 3311317, at *1. The record contains two judgment forms regarding the Petitioner's conviction of possession of a weapon during the commission of a dangerous felony offense. One judgment form sentences the Petitioner to a six-year sentence, and an amended form imposes a sentence of three-years. Neither judgment form is file-stamped; however, the post-conviction court found that it had amended the judgment to three years.

## Post-Conviction Proceedings

The Petitioner filed a pro se petition for post-conviction relief alleging that juvenile counsel was ineffective for waiving the transfer hearing, failing to conduct adequate pre-trial investigations, and failing to negotiate with the State for a more favorable plea deal. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition incorporating the original petition and arguing that the cumulative effect of the errors required post-conviction relief. The Petitioner, trial counsel, and juvenile counsel testified at the post-conviction hearing. Trial counsel testified about issues not before us on appeal.

The Petitioner testified that he was sixteen when he was originally charged. His family hired juvenile counsel to represent him. The Petitioner was detained at a juvenile detention facility and agreed that while there, he had access to juvenile counsel. He recalled meeting with juvenile counsel three to five times while he was in the detention facility. The Petitioner said that during those meetings, juvenile counsel never explained the differences between being tried as an adult and being tried as a juvenile. He testified that juvenile counsel never discussed waiving the transfer hearing with him and that he did not recall ever signing a waiver allowing his case to be transferred without a hearing. The Petitioner testified that juvenile counsel never discussed sentencing or any possible defense theories. He said that juvenile counsel mainly discussed payment of his fee during their meetings.

The Petitioner was in tenth grade at the time he committed the offenses. He testified that he was an average student but that he was always in trouble when he was in school. He stated that he had never been tested or diagnosed with any sort of learning disability. He agreed that he understood his charges, but he did not believe that he understood the severity of those charges. He believed that the juvenile transfer was automatic because he had turned seventeen.

On cross-examination, the Petitioner testified that he told juvenile counsel numerous times that he no longer wanted to be in detention. He acknowledged that after he waived the transfer hearing, he was released on bond. He denied that juvenile counsel informed him that if he waived the hearing, then he would be eligible for release on bond.

Juvenile counsel testified that he had practiced law for twenty-two years and had practiced almost exclusively criminal law for the past sixteen years. He stated that he usually handled between ten and fifteen juvenile cases a year. He described a juvenile transfer hearing as a "mini trial" and explained that transfer hearings require significant preparation. He said that a benefit to waiving a transfer hearing is to avoid locking a

defendant into "extra testimony" and that in some circumstances, there is a strategic advantage to waiving a transfer hearing. When discussing the Petitioner's case, he testified that the decision to waive the hearing was "100 percent" a strategic decision. He explained that he did not think that having a transfer hearing would have benefited the Petitioner. By waiving the transfer hearing, juvenile counsel was able to negotiate an agreement with the State on the Petitioner's bond and avoided locking the Petitioner into additional testimony that could be used against him in a trial. Juvenile counsel also wanted to avoid testimony from other witnesses.

On cross-examination, juvenile counsel agreed that if the transfer hearing had not been waived, there was a good possibility that the Petitioner's bond would not have been set or would have been increased once his case was transferred to criminal court. He explained that this was one of the factors that were considered in the decision to waive the transfer hearing. Further, juvenile counsel believed that the Petitioner's charges regarding fleeing would impact the bond set in criminal court. Juvenile counsel testified that the Petitioner did not undergo a mental health evaluation and believed that one was not conducted because of the timing surrounding the waiver of the transfer hearing. He also stated that he had no reason to question the Petitioner's mental health.

The post-conviction court issued a written order denying the Petitioner relief. The post-conviction court determined that juvenile counsel "strategically decided to waive the Petitioner's juvenile court transfer hearing for two reasons: (1) in order to negotiate a bond on behalf of the Petitioner, and (2) to prevent the [S]tate from preserving additional testimony of the victim." The court found no deficiency. The post-conviction court found that the Petitioner was not prejudiced by juvenile counsel's waiver of the transfer hearing because he failed to show that "there was a reasonable probability that the result would have been different if the juvenile court had conducted a transfer hearing." The court also found that juvenile counsel was not deficient for failing to request a mental health evaluation because counsel did not observe any signs that the Petitioner had mental health issues. The court noted that even if counsel was deficient, the Petitioner has failed to present any proof that the alleged deficiency resulted in prejudice. After addressing other issues not raised on appeal, the post-conviction court denied relief.

## ANALYSIS

On appeal, the Petitioner argues that juvenile counsel was ineffective for failing to properly investigate his mental health status prior to waiving the transfer hearing. He also asserts that juvenile counsel failed to adequately explain the differences between being tried as a juvenile and as an adult. The State responds that juvenile counsel was not deficient and that the Petitioner was not prejudiced by the waiver of the transfer hearing.

- 4 -

A petitioner is entitled to post-conviction relief from any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

To establish an ineffective assistance of a counsel claim, the Petitioner "must show that counsel's performance was deficient and that the deficiency prejudiced the defense." *Wiley v. State*, 183 S.W.3d 317, 329 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996)). This court "need not address both elements if the petitioner fails to demonstrate either one of them." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). To establish deficiency, the petitioner is required to show that trial counsel's actions "fell below an objective standard of reasonableness under prevailing professional norms." *Wiley*, 183 S.W.3d at 329. Trial counsel's performance is not deficient when the advice given is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to establish prejudice as a result of trial counsel's deficient performance, the petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). A juvenile has a constitutional right to the effective assistance of counsel during a transfer hearing. *Kent v. United States*, 383 U.S. 541, 554 (1966); *see Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006).

Juvenile courts have original jurisdiction over children who are alleged to be delinquent. T.C.A. § 37-1-134 (2011)[2]; *see Howell*, 185 S.W.3d at 326. Tennessee Code Annotated section 37-1-134 articulates the circumstances in which a juvenile court "shall" transfer a juvenile accused of criminal offenses to criminal court to be tried as an adult. *Howell*, 185 S.W.3d at 329. A juvenile who is sixteen years or older at the time that the offense is committed shall be tried as an adult if charged with certain enumerated offenses, including aggravated robbery. T.C.A. § 37-1-134(a)(1) (2011). The juvenile is entitled to a hearing to determine whether transfer is appropriate, and the juvenile must have sufficient written notice of the hearing. T.C.A. § 37-1-134(a)(2)-(3) (2011). At the hearing, the juvenile court is required to find that there are reasonable grounds to believe

---

[2] Tennessee Code Annotated section 37-1-134 has been amended numerous times since the offenses were committed.

that: "(A) The child committed the delinquent act as alleged; (B) The child is not committable to an institution for the developmentally disabled or mentally ill; and (C) The interests of the community require that the child be put under legal restraint or discipline." T.C.A. § 37-1-134(a)(4)(A)-(C) (2011).

> (b) In making the determination required by subsection (a), the court shall consider, among other matters:
>
> (1) The extent and nature of the child's prior delinquency records;
>
> (2) The nature of past treatment efforts and the nature of the child's response thereto;
>
> (3) Whether the offense was against person or property, with greater weight in favor of transfer given to offenses against the person;
>
> (4) Whether the offense was committed in an aggressive and premediated manner;
>
> (5) The possible rehabilitation of the child by use of procedures, services and facilities currently available to the court in this state; and
>
> (6) Whether the child's conduct would be a criminal gang offense, as defined in § 40-35-121, if committed by an adult.

T.C.A. § 37-1-134(b) (2011).

The Petitioner asserts that "the only prong at issue in this appeal is the interest of the community." *See* T.C.A. § 37-1-134(a)(4)(C) (2011). He argues that juvenile counsel was ineffective for failing to investigate his mental health prior to waiving the transfer hearing. *See* T.C.A. § 37-1-134(a)(5)(B), (b) (2011) (requiring the juvenile court judge to assess the "possible rehabilitation of a child by use of procedures, services, and facilities currently available to the Court in this State").

The Petitioner has failed to demonstrate that trial counsel was deficient in waiving the transfer hearing. Juvenile counsel testified that the decision to waive the transfer hearing was "100 percent" a strategical decision. He explained that by waiving the transfer hearing, he was able to negotiate a bond and that during his meetings with the Petitioner, the Petitioner expressed on multiple occasions his wish to be placed on bond. Further, juvenile counsel testified that he did not want to lock witnesses into any more testimony. This court will not "second-guess [juvenile] counsel's informed tactical and strategic decisions." *Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). Strategic

- 6 -

decisions of counsel are given deference when based upon adequate preparation. *Goad*, 938 S.W.2d at 369. The Petitioner has not demonstrated that juvenile counsel was deficient in waiving the transfer hearing.

The Petitioner argues that his case is analogous to *Clinard v. Lee*, 722 Fed. App'x 552 (6th Cir. 2018). We disagree. In *Clinard*, the Sixth Circuit concluded that this court had unreasonably applied *Strickland* in our conclusion that counsel was not ineffective for waiving the juvenile transfer hearing. 722 Fed. App'x at 553. In *Clinard*, the petitioner presented substantial evidence from three mental health care professionals regarding his amenability to rehabilitation. *Id.* at 563. Here, the Petitioner presented no such evidence regarding his mental health. The Petitioner failed to show any evidence at his mental health was in question at the time that juvenile counsel waived the transfer hearing. The most significant difference between the present case and *Clinard*, is that, in *Clinard*, the juvenile court judge who presided over the transfer hearing testified in the post-conviction hearing. *Id.* at 558. The juvenile judge testified that at the time trial counsel waived the transfer hearing, the issue of whether to transfer the case "was very much in doubt." *Id.* at 558-59. Here, the Petitioner failed to present any evidence that he would have been successful in preventing his case from being transferred if he had had a transfer hearing; therefore, the Petitioner has failed to demonstrate that he was prejudiced.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the post-conviction court.

---

JOHN EVERETT WILLIAMS, PRESIDING JUDGE